## TITLE NOT ALIENATED BY QUIT-CLAIM DEEDS.

Common Pleas Court of Clermont County.

WARREN C. CARTER V. DAVID GROSSNICKLE ET AL.

Decided, May 31, 1911.

*Title—Fee Tail Estates—Estoppel and Recitals—Executory Contracts
and Consideration—Attempt to Alienate an Estate in Expectancy—
Recitals which Did Not Pass an After-Acquired Title—Adequate
Consideration Essential to Specific Performance—Devise of Lands
to a Daughter and the Heirs of Her Body.*

1. A testator devised to his daughter and the heirs of her body 100
acres of land, thus creating a fee tail estate in his daughter. A
few years later the daughter deeded her interest in the 100 acres to
one of her brothers, which brother, during a course of twenty-two
years and during the life of the daughter secured quit-claim deeds
from six of the eight children of the daughter. The deeds were
the ordinary quit-claim deeds and each recited one dollar consid-
erations and contained the following recital: "The foregoing is
intended to convey to the said W. S. B. Randall all my right, title,
interest and estate in and to the foregoing described real estate,
whether vested or contingent, which I now have or may hereafter
have or derive from the will of my late grandfather, John Ran-
dall, giving and bequeathing said real estate to my mother, Han-
nah Carter, and the heirs of her body."

*Held:* Under the decision in *Dungan v. Klein*, 81 O. S., 371, the chil-
dren had no estate in the land during the life of their mother
which they could alienate.

2. The recitals contained in the quit-claim deeds were not sufficient to
pass the after acquired title at the death of the daughter. For a
recital in a quit-claim deed to create estoppel by deed the grantor
must make a definite assertion of some fact that he is seized or
possessed of the particular estate which his deed purports to con-
vey. The recital was simply an assertion that the grantor intended
to convey something which he did not then have but hoped to ac-
quire. It lacks the very essence of an estoppel, the assertion of a
fact which justice and good morals should preclude a party from
gainsaying.

3. The deeds were not sufficient to amount to executory contracts to
convey the after acquire title because not founded on an adequate
consideration, which is essential for specific performance by a
court of equity.

*W. F. Roudebush, W. A. Roudebush* and *A. C. Roudebush,* for plaintiff.

*C. B. Nichols, Frazier & Hicks, Breeding & Joseph, C. C. Benedict* and *Elzworth & Maple,* contra.

BAMBACH, J.

The case is submitted upon the pleadings, an agreed statement of facts, certain exhibits, namely, the several deeds from the children of Hannah Carter, deceased, and elaborate arguments and briefs of the several attorneys interested.

The controversy relates to the estate, if any, which the heirs of the body of Hannah Carter have in certain lands which were devised by John D. Randall, the grandfather of said heirs, to his daughter, Hannah Carter, and the heirs of her body.

The last will of John D. Randall was admitted to probate in said county October 8, 1849. It devised to Hannah Carter, *and the heirs of her body,* 110 acres of land, of which the premises in question are a part.

Hannah Carter died August 13, 1898, having previously, on September 3, 1851, conveyed said land by a deed containing covenants of general warranty to one Joseph O. Randall, who is spoken of as a brother, and he by a general warranty deed on January 8, 1856, to W. S. B. Randall, said to be another brother, and from him the title which he had thus acquired passed by a series of intermediate conveyances, containing covenants of general warranty to the defendants, Grossnickle.

The plaintiff and the defendants, other than David Grossnickle, Samuel Conover and T. P. Breeding, are children, the issue of Hannah Carter, the donee in tail. They each, during the life of their mother, said Hannah, did "remise, release and forever quit-claim" the premises in question for the consideration of one dollar, describing the same by metes and bounds at the following dates, viz: March 13, 1857, Elizabeth Carter Gillette to Joseph O. Randall; November 23, 1869, Armina I. Carter Cutler to W. S. B. Randall; February 8, 1878, the plaintiff, Warren C. Carter, to same: February 8, 1878, Mary E. Carter Wood to same; April 4, 1878, Caroline Carter Sullivan to same; June 17, 1879. Milton P. Carter to same.

Following the habendum clause in the several quit-claim deeds, excepting the one from Elizabeth Carter Gillette, is this recital:

"The foregoing is intended to convey to the said W. S. B. Randall all my right, title, interest and estate in and to the foregoing described real estate, whether vested or contingent, and which I now have or may hereafter have or derive from the will of my late grandfather, John Randall, giving and bequeathing said real estate to my mother, Hannah Carter, and the heirs of her body."

The deed from Elizabeth Carter Gillette to Joseph O. Randall contains the same recital, excepting that instead of the words "the foregoing is intended," the words "meaning hereby" are used.

The answers contain a general denial.  In another defense they plead this recital as an estoppel, and in another separate defense they set up the deeds as contracts to convey the premises and ask to have the title quieted.

Three propositions thus seem to be presented:

1. What estate, if any, had the children of Hannah Carter in said premises, prior to the execution by them of the quit-claim deeds?

2. What interest in or right to the land, if any, passed to the grantees from said children by operation of said deeds?

3. If no title passed by the deeds, then (a) are the grantors in said deeds estopped by the same, or by the recitals contained therein, from asserting a subsequently acquired title; and (b) can said grantors now be required or compelled to convey the title which accrued to them since the execution of said deeds by the death of their mother?

The first proposition is conclusively settled by the decision of the Supreme Court in *Dungan* v. *Kline*, 81 O. S., 371.

The donee in tail was living at the time said children, the issue, executed the deeds involved in the case, and under Section 4200, Revised Statutes, the issue "of a donee in tail during the life of such donee has no estate or interest in the lands entailed, which he can alienate."

Nevertheless it is contended that the interest of the issue of the donee in tail, during the life of such donee, is more than a "naked expectancy."

.A due regard for the arguments presented with so much earnestness and vigor justifies a brief review of this now almost extinct species of land tenures, in connection with the term "expectancy" or naked "possibility" involved in the third proposition.

The argument is, that the elements of uncertainty which distinguish the naked expectancy of an heir apparent are wanting in the case of an estate tail during the life of the donee in tail after the title has vested in the donee.

The determining element of uncertainty which applies to the prospect of the issue of a donee in tail as well as to an heir apparent is that the word "heir" in the description of an estate tail has the same meaning as when applied to an estate in fee simple; it is a word of limitation, and the "issue" takes *by descent* as heir from the donor.   *Pollock* v. *Speidel,* 17 O. S., 439 (4th syl.), 449; *same* v. *same,* 27 O. S., 94.

The essential distinction between a conditional fee and a fee tail is well illustrated by comparing *Jeffers* v. *Sampson,* 10 O. S., 101, 104, with *Needles* v. *Needles,* 7 O. S., 432.

There is no mistaking the meaning and scope of the doctrine announced in *Dungan* v. *Kline* in view of that part of the opinion of Crew, J., where he says:

"What estate, then, had the issue of the first donee in tail during *his* life? My answer is, none. The plaintiff could, therefore, convey none. Such issue is only an heir apparent or presumptive. His title is the bare possibility, or mere chance of becoming *eventually* the heir in tail; for, the maxim is *nemo est haeres viventis.* And it is well settled rule that a mere possibility can not be released or conveyed; and the reason thereof is that a release supposes a right in being."

See *Touchstone,* 319; *Bacon Abr. Title Release H;* see also *Harkness* v. *Corning,* 24 O. S., 427; quotation from *Dart* v. *Dart,* 7 Conn., 250.

2.   Though the several grantors in the quit-claim deeds, at the time of their execution, had no estate or interest in the land described therein, which they could alienate, yet it is said that the deeds purport to convey and the grantees expected to become invested with an estate of a particular description or quality, which now since it has become a vested interest in said grantors should

be held to have passed to their grantees by virtue and operation of the deeds.

This doctrine is urged principally on the authority of the United States Supreme Court. (*Van Ransselaer* v. *Kearney*, 11 How., 297; 13 L. Ed. 703.)

At page 325 (11 How.), the court clearly states the reason for the doctrine advanced, as follows:

"The principle deducible from these authorities seems to be that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument by way of recital or averment that he is *seized* or *possessed* of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the *seizin or possession of a particular estate* is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterward denying that he was so *seized* and *possessed* at the time he made the conveyance. The estoppel works upon the estate and binds an after-acquired title as between parties and privies.

"The reason is that the estate *thus affirmed* to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him in good faith and fair dealing should be forever hereafter precluded from gainsaying it."

It is quite apparent from this extract that what passes a subsequently acquired title from the grantor to the grantee of a quitclaim deed, without covenants but containing recitals or averments of *seizin* and *possession of a particular estate* in the land, is not the deed itself, but the estoppel flowing from such recitals in the deed.

And, while a grant can not be conceived without the idea of a grantor, grantee and a subject to pass by the grant (*McCall* v. *Hampton*, 56 Am. St., 335), it has been said that "a conveyance of all the right, title and interest in land is sufficient to pass the land itself, if the party conveying has an estate therein *at the time of the conveyance;* but it passes no estate which is not then possessed by the party." (2 Herman Estoppel, Section 694, page 827.)

It seems, therefore, safe to conclude, that no interest or estate in the land passed by the deeds, and it now remains to consider the third proposition stated.

3. (*a*) First, whether the grantors in the quit-claim deeds are estopped from asserting in this action against those who stood in privity with their grantees, an after-acquired title to the land by reason of the death of their mother; and, secondly, if they are not estopped, can their deeds be taken and regarded as contracts for deeds for the land described therein.

Counsel have submitted exhaustive briefs upon this question, which have been carefully considered.

This case seems to be distinguishable from *Dungan* v. *Kline, supra,* solely because of this proposition, that case not reaching these questions.

(*b*) It is not claimed that there is any covenant of warranty in the deeds; but that the quoted recital is tantamount thereto, and operates to estop the plaintiff and the other issue of Hannah Carter from now claiming any interest or estate in the land.

At an early period in the judicial history of the state, the Supreme Court decided that a conveyance by deed of bargain and sale for a valuable consideration with covenants binding the grantor and his heirs to warrant and defend the title, estops him and all claiming under him from claiming an after-acquired title (*Bond* v. *Swearinger,* 1 O. R., 411, 412). The same doctrine is announced in *Allen* v. *Parrish,* 3 O. R., 116, 117, and *Douglass* v. *Scott,* 5 O. R., 195. In *Boyd* v. *Longworth,* 11 O. R., 253, it is laid down that "*an express warranty* is the *only contract* which has the effect to estop the warrantor and those claiming under him from maintaining title under a subsequent purchase. *The covenant must be one running with the land.*" To the same effect is *Kinsman* v. *Loomis,* 11 O. R., 475.

It is claimed by counsel for defendant, Grossnickle, that even where the grantor was without any title at the time of his conveyance, *and he assumed to pass the title* with covenants of warranty, *or covenants* of like import, a subsequently acquired title to the particular land will inure to the grantee by way of estoppel.

Upon this contention the question is, are there in these deeds any covenants of like import.

As already intimated, it is claimed that the quoted recital amounts to such.

In *Douglass* v. *Scott*, 5 O. R., 197-8, Lane, J., states clearly the principle upon which estoppel by recitals is founded. It is not necessary to quote at length; only this:

"The admission of a *fact*, however made, is always evidence of the *fact* against the party making the admission, but the effect of the admission depends upon the manner and purpose for which it is made. * * * The law seems to be summed up in Com. Dig., Estoppel, 77, A. 2; 'In all cases where the condition of a deed has a reference to any particular thing, the obligor shall be estopped to say there is no such thing.'"

The estoppel by warranty exists in the contract; the estoppel by recital depends upon conduct.

The recital in these deeds has reference to the grantor's *intention,* and the intention expressed relates solely to the *effect* which the deed is to have, namely, to pass the expectancy of the grantor under his grandfather's will in the realty described in the deed.

Much confusion arises from a failure to distinguish clearly between covenant and recital, and the character of the latter.

Thus, in Section 642 of Herman on Estoppel, he says:

"Where it distinctly appears in a conveyance either by *recital* or *admission,* or *otherwise,* that the parties actually *intended to convey* and receive reciprocally a certain estate, they are estopped from denying *the operation of the deed* according to its intent."

The author cites as an authority to this proposition among others, *Van Ranssaeler* v. *Kinsey, supra, Kinsman* v. *Loomis, supra,* and *Williams* v. *First Presby. Society of Cin.,* 1 O. S., 478.

The first two have been referred to, and the last case does not sustain the text. Subds. 18 and 20 of the lengthy syllabus are perhaps, intended by the reference; but these only hold, what should be generally understood, that a deed with general covenants of warranty binds the grantor and his heirs *forever;* and that where a deed was evidently *designed to convey a fee,* a court of equity will not lend itself to defeat the intent.

The clause quoted from Herman, is followed in Section 643 by this statement:

"There was then an ordinary and an extraordinary effect attached to an estoppel. The one was personal in its character,

like the rebutter in a warranty, and estopped the grantor and his heirs *from doing or alleging* anything *contrary* to the *tenor and effect* of his sealed instrument. The other, besides this quality, possessed the high function of actually transferring every estate, present or future, vested or contingent," etc. And the author concludes this section by the statement "and this effect was peculiar to them alone (a feoffment, a fine or a lease), there being no authority in any of the English books to show that it was produced by any other species of conveyance."

At Section 578, the author had said:

"Estoppels do not give an estate, nor do they divest another of an estate or interest in land. They merely by (should read bind) the interest by a conclusion which precludes the parties between whom it is made to operate from asserting or denying the *state of the title,* or in other words, a title is presumed rather than acquired by estoppel, inasmuch as a person is concluded by his *own act* from disputing the title of another."

An estoppel has also been defined as "a preclusion of a person to assert *a fact* which has been admitted or determined under circumstances of solemnity, such as by matter of record or by deed, or which he has by an act *in pais* induced another to believe and act upon to his prejudice." 11 Am. & Eng. Enc. Law, 2d Ed., 387.

In case of a covenant, in order to avoid the circuity of action the *contract* transmits the title, which otherwise would be recovered in an action on the covenant. The recital in a deed has no such effect (Herman, 578, *supra*), but acts in analogy to an estoppel *in pais,* to preclude the party who has asserted a fact from controverting the fact as against another who has acted upon it and has been or would be prejudiced by the denial.

The cases confirm this doctrine:

*Van Ransselaer* v. *Kline,* the last clause quoted at page six, and the statement relating to seizin and possession.

*Magruder* v. *Esmay,* 35 O. S., 221, the grantor had an equity to which the patent, when issued, related.

*Rodigkeet* v. *Andrews,* 74 O. S., 116, there was a *present contract of employment* to which the assignment related.

Showing the distinction in principle it is only necessary to refer to *Bell* v. *Mulholland,* 90 Mo. App., 612, cited in the opinion.

In determining the effect which should be given to the recital under consideration, the entire description must be looked to. *Plummer* v. *Gould*, 31 Am. St., 571.

While the granting clause in the deeds purports **to** convey *the land*, and in the absence of the recital might operate as the recital of the *fact* of title and right to convey, the recital makes it clear that the subject-matter of the conveyances was the expectancy resting upon John Randall's will.

That was, indeed, simply the assertion, that the grantor intended to convey something which he did not then have, but hoped to acquire.

It lacks the very essence of an estoppel, the assertion of a fact, which justice and good morals should conclude the party from gainsaying.

The deeds conveyed nothing; they are therefore inoperative; and since the estoppel (if the recital could be said to amount to an estoppel) is itself inoperative. *Patterson* v. *Pease*, 5 O. R., 191; *Wallace* v. *Minor*, 6 O. R., 367, 370.

It is urged that the several grantees in the chain of title are innocent purchasers, and to grant the remedy which the plaintiff seeks in this action would be a fraud upon their rights.

The facts, however, do not bear out this contention. The title upon which their right rests is founded upon the conveyance of Hannah Carter. Every succeeding purchaser, even after the quit-claim deeds had been executed, seems to have relied upon the covenants of warranty in the antecedent conveyances.

. There is nothing in the case to show that the quit-claim deeds operated as an inducement to any of the purchasers. The agreed statement of facts contains a clause that the claim of title is correctly given in the answer and cross petition of Samuel Conover.

This pleading avers that Joseph O. Randall conveyed the premises, of which the land in dispute is a part, to William S. B. Randall on January 8th, 1856, and that Elizabeth Carter Gillette conveyed by quit-claim deed to *Joseph O. Randall* on the 13th day of March, 1857, and it nowhere appears that Joseph ever conveyed this interest to William. If these statements are correct, there could not have been any inducement to the purchasers subsequently based upon this deed.

But, there is no question that all the conveyances bore upon their face notice of their own infirmity, and of the fact, that they were attempts to pass an expectancy, and not any present estate.

(c.)   It is furthermore urged with great emphasis and ability that these conveyances should be treated as contracts to convey, and that the parties who attempted to pass the title and failed in this should be now compelled by the decree of this court to convey the title to the purchaser who connects himself with Hannah Carter's conveyance.

At this point two conflicting principles of public policy present themselves.

On the one hand is the almost overpowering consideration and demand of a moral duty which inclines the mind to compel the conscientious performance of every agreement; and on the other hand the ever present solicitude of courts of equity to protect those who are under some disability or inequality of individuality.

The enforcement of the quit-claim deeds as contracts for the conveyance of the land has been very earnestly and ably urged upon the court.

In one of the cases to which I have been referred (*McAdams* v. *Bailey,* 169 Ind., 518; s. c., 124 Am. St. Rep., 243) the court says:

"The deed of such an interest (an expectancy) to a stranger would have been invalid at the common law, as calculated to provoke maintenance and other contentions (Lampets case [1631] 10 Coke, 46-48).   Courts of equity, however, have from a very early period upheld specific assignments of mere possibilities based *on a valuable consideration,* where the enforcement of the agreement would not contravene their own rule or public policy, the underlying theory being that where there is a duty to convey the agreement will be given force as an executory contract." (124 Am. St. Rep., 243.)

To this proposition *Radijkeit* v. *Andrews,* 74 O. S., 104, is cited among many others.   I have already alluded to the case in the 74 O. S. to show upon what principle the doctrine of an estoppel by recital rests.   Indeed, the ruling of the Indiana Supreme Court proceeds upon other grounds, as appears from this in the opinion

at page 244 (124 Am. St. Rep.), that the court places its ruling "not on the effect of the recitals, as such, but on the ground that an estoppel exists because *of the covenant of warranty.*"

Based solely upon the effect of the recital the conveyance of the expectancy in the Indiana case would have to be held invalid, and the prior case in the same court of *McClure* v. *Raben,* 125 Ind., 139, to which counsel for plaintiff has invited my attention, is of equal weight.

But coming back to the proposition under discussion there seems to be no conflict in the authorities as to the doctrine that a court of equity will not enforce specific performance unless a valuable consideration be shown.

Pomeroy (2 Equity, Section 953, page 1741) says:

"The rule is well settled that all conveyances, sales and charges, and *contracts of sale* or charge, of their future and expectant interest made by heirs, reversioners and other expectants *during the lifetime* of their ancestors or life tenants, upon *an inadequate consideration,* will be relieved against in equity, and either wholly or partially set aside. In this instance *fraud is inferred from mere inadequacy of consideration.*"

Further on, in the same section, the author says:

"All dealings by such expectants are not necessarily and absolutely voidable. But, in every such conveyance or contract with an heir, reversioner or expectant, a presumption of invalidity arises from the transaction itself, and the burden of proof rests upon the purchaser or other party claiming the benefit of the contracts to show affirmatively its perfect fairness, and that *a full and adequate* consideration was paid—that is, the fair market value of the property, and not necessarily the value as shown by the life tables."

See further, 6 Am. & Eng. Enc. Law, 2d Ed., 683 (a), 684 (b); 13 Cyc., 535; *Needles* v. *Needles,* 7 O. S., 432; *McCall* v. *Hampton,* 56 Am. St., 3451, note.

The consideration of one dollar is regarded as *prima facie* a good consideration, and until it is impeached sufficient to sustain the deed.

*Steele* v. *Worthington,* 2 O. R., 182, the court in this case (p. 185) says: "The complainants have cast on it the imputation of fraud."

The law casts upon this consideration the inference of fraud from the mere inadequacy of the consideration. (2 Pomeroy p. 1741, *supra*.)

Farther it must be remembered that the quit-claim deeds are under consideration at this point not as conveyances, but as executory contracts to convey. The question is not whether the consideration of one dollar is sufficient to sustain the deed, but whether that consideration is an adequate consideration to induce or warrant a court of equity to decree specific performance.

It does not appear that the several vendors of the land trace their possession to the quit-claim deeds, nor that they were thereby induced to purchase.

It does appear, that in each instance a general warranty deed was given, which would seem to indicate that the quit-claim of the issue of Hannah Carter, executed in her lifetime, can not be regarded as an inducement. On the contrary, the very recitals were notice to the several purchasers that no estate or interest in the land then existed, which the grantors could alienate, and that the consideration was not an adequate consideration to support a suit in equity for specific performance.

It is also urged that this was *a family arrangement*.

But there is no evidence to support this claim. The transactions were between uncles and nephews and nieces; and no evidence is offered that they stood towards each other in the relation of members of a family, though they were related. Each appears to have acted independently of all others, and not on account of any agreement or arrangement between them.

It is contended, also, that the complainants in this action have been guilty of laches. It is certainly not the policy of the law to encourage negligence or dormancy in the assertion of equitable rights. The maxim being that equity encourages the diligent and not the tardy, and stale equities are abhorred.

The contents of laches as recognized by courts of equity are well stated in *Selden* v. *Kennedy*, 104 Va., 826 (7 Ann. Cases, 879), thus:

"Laches must be such as to afford a reasonable presumption of satisfaction or abandonment of the claim, or such as to prevent a proper defense by reason of the death of the party, loss of evidence," etc.

It is said by the Supreme Court of Wisconsin (3 Ann. Cases, 773), "that mere delay for any length of time short of a period to extinguish a right under the statute of limitations does not bar an action in equity to vindicate such right." See, also, 204 U. S., 623.

I do, therefore, upon careful and painstaking consideration. find the equities of the case in the plaintiff and that the relief sought should be granted.

A decree may be entered in accordance with this finding. Exceptions on behalf of defendant, Grossnickle, may be noted; likewise his notice of intention to appeal. The amount of the appeal bond is fixed at a sum sufficient to cover costs and one year's rent of the premises.