JOURNAL ENTRY and OPINION
{¶ 1} Defendant Steven H. Kerr appeals from a common pleas court order granting plaintiff's motion for a directed verdict in this eviction action. He argues that the trial court erred by failing to properly construe and apply two competing leases and by granting judgment as a matter of law on the complaint.
 Procedural History {¶ 2} Plaintiff Showe Management Corporation, d/b/a Lake Shore Towers, originally filed this action in the Lakewood Municipal Court on April 8, 2003. It filed an amended complaint on April 25, 2003, before an answer was due. The amended complaint averred that on February 20, 2003, Showe Management gave Kerr notice that it was terminating his lease effective March 31, 2003. When Kerr failed to pay rent on March 1, Showe gave him a three-day notice to vacate the premises pursuant to R.C. 1923.02(A)(9). Showe gave Kerr another three-day notice on April 1, 2003 for holding over after the termination of the lease and another on April 7, 2003 for non-payment of rent and for harboring a dog without Showe's permission. The complaint asserted that Kerr continued to occupy the premises in violation of the lease and statute, and prayed for an order of restitution and possession of the premises, plus a judgment for past due rent and late charges.
 {¶ 3} Kerr answered and asserted various affirmative defenses to Showe's complaint. In addition, he counterclaimed that he was fraudulently induced to execute an amendment to the original May 1999 lease, and that the eviction proceedings were retaliatory and in breach of the lease agreement.
 {¶ 4} The court consolidated this action with Kerr's preexisting action for deposit of rent. Because the damages claimed in Kerr's counterclaim exceeded the jurisdiction of the municipal court, the court transferred the matter to the common pleas court. The common pleas court bifurcated the rent deposit and eviction proceedings.
 {¶ 5} The matter was transferred to a visiting judge for trial on Showe's claim for restitution of the premises. At the conclusion of all of the evidence, Showe moved the court for a directed verdict. The court granted Showe's motion, concluding that Showe terminated Kerr's month-to-month lease by properly serving him with notices pursuant to R.C. 5321.17(B) and R.C.1923.04, but Kerr continued to occupy the premises, and that Showe had demonstrated a right to immediate possession. The court ordered that a writ of execution should issue, and found there was no just reason for delay. Defendant appeals from this order.
 Facts {¶ 6} Dawn Lord, the property manager for Lake Shore Towers, testified at trial that Kerr originally signed a lease agreement for a term of approximately one year, from May 15, 1999 to May 31, 2000. This agreement provided that after the initial term the lease would continue month-to-month unless terminated pursuant to the agreement. The lease's termination provision stated, in pertinent part:
 {¶ 7} "Any termination of this agreement by the landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement. The Landlord may terminate this Agreement only for:
 {¶ 8} "(1.) the Tenant's material noncompliance with the terms of this Agreement;
 {¶ 9} "(2.) the Tenant's material failure to carry out obligations under any State Landlord and Tenant Act;
 {¶ 10} "(3.) criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug related criminal activity on or near such premises, engaged in by a Tenant, any member of the Tenant's household, or any guest or other person under the Tenant's control;
 {¶ 11} "(4.) expiration of the section 8 Housing Assistance Payments Contract between the owner and HUD: or
 {¶ 12} "(5.) other good cause, which includes, but is not limited to, the Tenant's refusal to accept the Landlord's proposed change to this Agreement. Terminations for `other good cause' may only be effective at the end of any initial or successive term."
 {¶ 13} "Material noncompliance" under paragraph one included one or more substantial lease violations; repeated minor violations which, e.g., interfered with management or adversely affected health and safety; and non-payment of rent.
 {¶ 14} On November 30, 2001, Ms. Lord sent Kerr and other conventional (non-HUD) tenants a letter with a copy of a new proposed lease which she told them they would be required to sign and which would become effective February 1, 2002. Ms. Lord testified that Kerr came into the rental office and signed the new lease on January 11, 2002. He had the entire document before him when he signed. The new lease provided that either party could terminate the lease by giving written notice at least 30 days before the expiration of the lease term.
 {¶ 15} At trial, Kerr denied that he had ever seen a complete copy of the new lease and complained that he was not able to review it before he signed it. He claimed he asked for a copy but management was not able to provide him with one. He denied that he executed the new lease on January 11, alleging he was out of town on that date. He averred that Ms. Lord asked him to come into the rental office on January 27 or 28, 2002 and asked him to sign the last page of the agreement because "HUD people were coming tomorrow to review them because the new rent is effective February the 1st." He testified that Ms. Lord told him "it was the same lease, just consolidated without the HUD paraphernalia written in it." He testified that he did sign the last page at that time, but did not date it.
 {¶ 16} Cross-examination revealed that Kerr previously testified at deposition that he had received Ms. Lord's letter regarding the new lease shortly after November 30, 2001 and read the document when he received it. At trial, he claimed that he had been confused during his deposition.
 {¶ 17} Ms. Lord testified that Kerr made extensive renovations to the apartment throughout the first year of his tenancy, without her prior knowledge or permission. Other tenants repeatedly complained about the noise late in the evening, as a result of which she warned Kerr that if he continued she would have to terminate his lease.
 {¶ 18} Lord also testified that Kerr installed video cameras in the hallway without the permission of management, and she instructed him to remove them. When he did not, she had a staff member "cut the cords for the cameras."
 {¶ 19} In September 2002, the fire marshal cited the building for a fire code violation because of a picture which Kerr had hung over a fire hose/standpipe cabinet. Management had previously asked Kerr to remove the picture in July 2000, but Kerr did not. Management again asked Kerr to remove the picture in a letter dated September 10, 2002. Although Kerr told Lord that he had completed management's requests, he also sent Lord a copy of a letter he wrote to the fire marshal confirming an agreement that he and the fire marshal had reached with respect to labeling the cabinet.
 {¶ 20} On January 23, 2003, the fire marshal again informed management that the picture covering the cabinet violated the fire code. On January 28, 2003, Maric Ball, the community manager at Lake Shore Apartments, wrote a letter to Kerr directing him to remove the picture. He did not, so management removed the picture on February 13, 2003. Meanwhile, the fire marshal informed Ms. Ball that Kerr wanted to appeal the marshal's decision, so the marshal intended to issue a citation upon which Kerr could appeal to the state fire marshal. Management did not authorize Kerr to appeal the code violation on their behalf.
 {¶ 21} On February 13, 2003, as management were removing the picture in the hallway, Kerr advised management that his bathroom ceiling was collapsing. Lord observed that the drywall on the ceiling was sagging somewhat and was damp. The following day, management found that the source of the dampness, a cracked drum trap in the bath tub on the floor above. A two foot by two foot hole was cut in the ceiling in Kerr's apartment to access the trap for repairs. Plumbing repairs were completed on February 17; repairs to the ceiling were completed on March 15 or 16, 2003.
 {¶ 22} On February 20, 2003, Lord sent Kerr a thirty day notice to terminate the lease, advising him that his lease would end on March 31, 2003. On February 27, Kerr filed a rent deposit action in Lakewood Municipal Court. Lord sent Kerr a three-day notice to vacate the premises on March 7, 2003 for failure to pay rent. She sent him another three-day notice to vacate on April 1, 2003 and another three-day notice on April 7, 2003. The April 7 notice stated that appellant was being asked to leave for material non-compliance with the lease terms, including failure to pay rent, parking charges, and air conditioning charges, and violation of the building's policy regarding pets. Kerr did not vacate the premises as requested. A further three-day notice was sent on May 8, 2003, directing Kerr to vacate the premises on the ground that he interfered with managment by following them and taking photographs. Yet another three-day notice was sent on June 6, 2003.
 {¶ 23} In December 2002, Kerr instituted a lawsuit against two maintenance employees at Lake Shore Apartments for defamation and malicious prosecution as a result of a criminal charge of vandalism which was instituted against Kerr and upon which Kerr was found not guilty. Lord was added as a defendant in that action in an amended complaint filed on April 30, 2002. Lord denied that she sought to evict Kerr in retaliation for this action.
 Law and Analysis {¶ 24} Kerr has appealed a common pleas court order directing the verdict for Showe. "A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. * * * A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment."Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 599. A motion for directed verdict should be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4).
 {¶ 25} Kerr argues that the court improperly determined that the 2002 lease was a valid and binding contract. He asserts that there was evidence that there was inadequate consideration to support the 2002 lease and that he was fraudulently induced to sign it. He also argues that there was evidence that he was evicted in retaliation for his complaints about the damage to his ceiling.
 Adequacy of Consideration to Support the 2002 Lease {¶ 26} In general, courts will not inquire into the adequacy of consideration. However, Kerr contends that "when an allegation of fraud is made, * * * the alleged inadequacy of consideration for a lease [will] be considered as a ground to set aside the lease." We disagree.
 {¶ 27} "`While it is necessary that the consideration of a promise should be of some value, it is sufficient if it be such as could be valuable to the party promising; and the law will not enter into an inquiry as to the adequacy of the consideration, but will leave the parties to be the sole judges of the benefits to be derived from their contracts, unless the inadequacy ofconsideration is so gross as of itself to prove fraud orimposition.'" Lake Hiawatha Park Assn v. Knox County Agr. Soc.
(1927), 28 Ohio App. 289, 295, quoting Judy v. Louderman
(1891), 48 Ohio St. 562 (emphasis added). Thus, grossly inadequate consideration may be evidence of fraud. LakeHiawatha, 28 Ohio App. at 295; Carter v. Grossnickle (1911), 22 Ohio Dec. 680, 691. However, an allegation of fraud does not automatically require an assessment of the adequacy of the consideration to support a contract, as Kerr apparently argues.
 {¶ 28} There was consideration to support the 2002 lease. The parties executed a new lease agreement which replaced the obligations of an existing lease. Parties may extinguish a prior obligation by entering into a new agreement; the discharge of the existing obligation is sufficient consideration to support the new contract. McGlothin v. Huffman (1994), 94 Ohio App.3d 240,244; Phelps v. Logan Natural Gas Fuel Co. (1920),101 Ohio St. 144, 148. The discharge of the prior lease in this case was sufficient consideration for the new lease as a matter of law. Therefore, we reject appellant's argument that there was inadequate consideration to support the 2002 lease.
 Affirmative Defenses {¶ 29} Appellant also contends that the court erred by failing to consider his affirmative defenses. He claims that there was evidence from which the jury could have concluded that he was fraudulently induced to sign the second lease and that he was evicted in retaliation for his complaints about his bathroom ceiling. We examine each of these arguments in turn.
 {¶ 30} Fraudulent Inducement. Fraudulent inducement is not a complete defense to this eviction action. Even if a jury determined that the 2002 lease was fraudulently induced, there would still be a question whether the landlord was entitled to possession under the 1999 lease. Judgment in favor of Showe would still be appropriate if no reasonable jury could conclude that Kerr had not breached his lease obligations under either contract.
 {¶ 31} We need not engage in this contorted analysis, however, because we find the evidence was insufficient as a matter of law to support Kerr's fraudulent inducement claim even when viewed in the light most favorable to Kerr. "To establish a right to relief upon a claim of fraudulent inducement to enter into a contract, a claimant must adduce evidence of (1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) an intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance." Metropolitan Life Ins. Co.v. Triskett Ill., Inc. (1994), 97 Ohio App.3d 228, 235. Kerr does not assert that Lord made any affirmative misrepresentation to induce him to sign the new lease. Rather, he contends that Lord induced him to sign the final page of the 2002 lease by failing to disclose that Kerr's "rights against eviction, protected by the 1999 lease, would be eviscerated."
 {¶ 32} "`One who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.' * * *" State v. Warner (1990)55 Ohio St.3d 31, 39, quoting Chiarella v. U.S. (1980),445 U.S. 222, 228. In an arm's length business transaction, "each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other."Blon v. Bank One, Akron, N.A. (1988), 35 Ohio St.3d 98, 101,519 N.E.2d 363.
 {¶ 33} Kerr does not explain the source of Showe's alleged duty to disclose the specific terms of the contract. There is no evidence that he inquired about the termination provisions of the new agreement. Therefore, Kerr failed to prove he was fraudulently induced to enter into the 2002 contract as a matter of law.
 {¶ 34} Pursuant to the 2002 lease, either party could terminate the lease "by giving the other WRITTEN NOTICE AT LEAST THIRTY DAYS PRIOR TO THE EXPIRATION OF THIS LEASE" (emphasis in original). Showe gave Kerr such notice by its letter of February 20, 2003 informing Kerr that his lease was terminated effective March 31, 2003. Kerr failed to vacate the premises and was therefore a holdover tenant. Showe properly served him with a three-day notice to vacate as required by R.C. 1923.04, but Kerr continued to occupy the premises. Therefore, Showe demonstrated its right to restitution of the premises.
 {¶ 35} Retaliation. Kerr argues that there was an issue of fact for the jury to decide whether Showe evicted him in retaliation for his complaints about the damage to his bathroom ceiling. Showe sent the notice terminating Kerr's lease on February 20, 2003, so the only complaint which could serve as the basis for Kerr's retaliation claim is his original complaint about the bathroom ceiling on February 13, 2003.
 {¶ 36} Not every claim of retaliation is a defense to an action for restitution of rental property; R.C. 5321.02 defines the circumstances under which retaliation may be a defense. R.C.5321.02 allows a tenant to defend an action for possession of premises on the ground that the landlord is pursuing the action to retaliate against the tenant because, e.g., the tenant complained to the landlord about a violation of R.C. 5321.04. Among other things, R.C. 5321.04 requires landlords to make all repairs and do whatever is reasonably necessary to maintain the premises in fit and habitable condition.
 {¶ 37} A damaged ceiling in one of the two bathrooms in Kerr's apartment simply cannot be viewed as a complaint that the premises were unfit or unhabitable. Moreover, because the damage had just occurred, the complaint cannot be construed as a charge that the landlord had failed to meet its obligation to maintain the premises. Cf. R.C. 5321.07. Therefore, as a matter of law, Kerr's complaint was not a complaint for violation of the landlord's duties under R.C. 5321.04 upon which he could base a claim of retaliatory eviction.
 {¶ 38} Therefore, we affirm.
Judgment affirmed.
Sweeney, P.J., and Gallagher, J., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.