BLON ET AL., APPELLEES, *v.* BANK ONE, AKRON, N.A., APPELLANT, ET AL.

[Cite as Blon *v.* Bank One, Akron, N.A. (1988), 35 Ohio St. 3d 98.]

(No. 86-2054—Decided February 10, 1988.)

*Michaels & McGown* and *Daniel J. McGown,* for appellees.

*Guy, Lammert & Towne, Ronald N. Towne* and *Cathy S. Drescher,* for appellant.

*Baker & Hostetler, George W. Hairston* and *Mark A. Johnson,* urging reversal for *amicus curiae,* Ohio Automobile Dealers Association.

MOYER, C.J. For the reasons that follow, we reverse, and reinstate summary judgment for Bank One.

The first question presented by this appeal is whether, as a matter of law, Bank One had a duty to disclose the fee paid to West for arranging the Blons' loan with Bank One under the federal Truth in Lending Act, Section 1601 *et seq.,* Title 15, U.S. Code, and regulations promulgated thereunder in Part 226, Title 12, C.F.R. The court of appeals reversed summary judgment for Bank One, holding that reasonable minds could conclude that the fee paid was a "finder's fee," and that as a component of the total "finance charge," defined in Section 226.4, Title 12, C.F.R., such fee must be disclosed to the consumer pursuant to Section 226.18(d), Title 12, C.F.R. We find no such duty inheres in these regulations.

Section 1638(a)(3), Title 15, U.S. Code, requires creditors in consumer credit transactions to disclose "* * * [t]he 'finance charge,' *not itemized* * * *." (Emphasis added.) Section 1605(a)(3), Title 15, U.S. Code, further

includes in the finance charge any "[l]oan fee, finder's fee, or similar charge." As defined in Section 226.4(a), Title 12, C.F.R., the finance charge includes "* * * any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. * * *"

Whether the fee paid to West is characterized as a "finder's fee" or "similar charge," it was includable in the finance charge which was disclosed to the Blons. Neither Section 1601 *et seq.*, Title 15, U.S. Code, nor Sections 226.4 and 226.18(d), Title 12, C.F.R.,[1] which mimic the code's definition of finance charge and disclosure requirement, impose any further duty to separately disclose the fee paid to West. Therefore, contrary to the conclusion of the court of appeals, because characterization of the fee does not affect the duty of disclosure, no material issue of fact existed as to Bank One's duty to

disclose the fee.[2] Further, the intent of the federal Truth in Lending Act to promote the informed use of credit and enable consumers to compare competing credit terms is not hindered by nondisclosure of the fee arrangement, as the Blons were free to obtain financing elsewhere for their purchase. See Section 1601(a), Title 15, U.S. Code.

Therefore, we hold that neither Section 1638(a)(3), Title 15, U.S. Code, nor Section 226.18(d), Title 12, C.F.R., requires creditors in consumer transactions to separately disclose any finder's fee or similar charge which is a component of a finance charge disclosed to a consumer. Accordingly, we reverse, and reinstate summary judgment for Bank One on the Blons' truth-in-lending claim.[3]

We next must determine whether West's representation to the Blons that Bank One charged an eighteen and one-half percent interest rate, without disclosing that lower rates were available or revealing that West

---

[1] Section 226.4, Title 12, C.F.R. states, in pertinent part:

"(a) *Definition.* The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

"(b) *Example of finance charge.* The finance charge includes the following types of charges * * *:
"* * *

"(3) Points, loan fees, assumption fees, finder's fees, and similar charges.
"* * *"

Section 226.18, Title 12, C.F.R. states, in pertinent part:

"For each transaction, the creditor shall disclose the following information as applicable:
"* * *

"(d) *Finance charge.* The 'finance charge,' using that term, and a brief description such as 'the dollar amount the credit will cost you.'
"* * *"

[2] *Meyers* v. *Clearview Dodge Sales, Inc.* (C.A. 5, 1976), 539 F. 2d 511, relied on by the trial court, is distinguishable as it was decided under prior versions of the statute and regulations, not applicable here, requiring "finder's fees" to be separately disclosed as part of the finance charge.

[3] Although not raised by the parties on appeal, we note our agreement with the lower courts that, because Bank One is a financial institution under R.C. 5725.01(A), the transaction at issue is excepted from application of the Ohio Retail Installment Sales Act by R.C. 1317.01(P) and the Ohio Consumer Sales Practices Act by R.C. 1345.01(A).

received a higher fee for charging a higher rate, breached a common-law duty of complete disclosure owed by Bank One.

Ordinarily in business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other. Pomeroy, Equity Jurisprudence (5 Ed. Symons Ed. 1941) 558, Section 904; Goldfarb, Fraud and Nondisclosure in the Vendor-Purchaser Relationship (1956), 8 West. Res. L. Rev. 5, 25. See, also, *Umbaugh Pole Bldg. Co.* v. *Scott* (1979), 58 Ohio St. 2d 282, 12 O.O. 3d 279, 390 N.E. 2d 320.

However, this court has recognized that in certain circumstances there exists a duty to speak. *Miles* v. *McSwegin* (1979), 58 Ohio St. 2d 97, 100, 12 O.O. 3d 108, 110, 388 N.E. 2d 1367, 1369. For example, a party to a business transaction in a fiduciary relationship with another is bound to make a full disclosure of material facts known to him but not to the other. *Miles* v. *Perpetual S. & L. Co.* (1979), 58 Ohio St. 2d 93, 12 O.O. 3d 106, 388 N.E. 2d 1364 (agent). See, generally, *Connelly* v. *Balkwill* (N.D. Ohio 1959), 174 F. Supp. 49, 11 O.O. 2d 289. Such a duty may also arise out of an informal relationship where both parties to a transaction understand that a special trust or confidence has been reposed. *Umbaugh Pole Bldg. Co.* v. *Scott, supra,* paragraph one of the syllabus; *Stone* v. *Davis* (1981), 66 Ohio St. 2d 74, 78, 20 O.O. 3d 64, 67, 419 N.E. 2d 1094, 1098; *Central States Stamping Co.* v. *Terminal Equipment Co.* (C.A. 6, 1984), 727 F. 2d 1405. Full disclosure may also be required of a party to a business transaction "where such disclosure is necessary to dispel

misleading impressions that are or might have been created by partial revelation of the facts." *Connelly* v. *Balkwill, supra,* at 58, 11 O.O. 2d at 296-297; *Miles* v. *McSwegin, supra,* at 101, 12 O.O. 3d at 111, 388 N.E. 2d at 1369-1370 (real estate agent). See, also, 2 Restatement of the Law 2d, Torts (1977), Sections 551 and 529.

The court of appeals reversed summary judgment in favor of Bank One finding that material issues of fact existed as to whether a special relationship of trust and confidence existed between West and the Blons, and whether West acted as an agent of Bank One so that such a relationship also existed between Bank One and the Blons requiring full disclosure of available Bank One interest rates and corresponding fees paid to West. In addition, the Blons assert that Bank One, through West, had a duty to speak because the partial disclosure of interest rates available to them from Bank One through West was misleading. Construing the evidence in favor of the Blons, however, we find that reasonable minds could only conclude that Bank One had no special relationship of trust and confidence with the Blons and, therefore, had no duty to disclose the details of its financing fee arrangement with West.

Assuming, as the Blons have argued, that West acted as an agent of Bank One, this court has previously recognized that the relationship of debtor and creditor, without more, is not a fiduciary relationship, *Umbaugh Pole, Bldg. Co.* v. *Scott, supra,* and, more specifically, that a bank and its customers stand at arm's length in negotiating terms and conditions of a loan, *Stone* v. *Davis, supra,* at 78-79, 20 O.O. 3d at 67, 419 N.E. 2d at 1098.

The facts before the trial court on summary judgment indicate that Richard Blon had experience with

credit transactions, having previously purchased two other automobiles on credit, one from West and one from a competing dealer; that the Blons did not solicit advice regarding other available rates, being satisfied with Bank One because it alone extended a forty-two-month repayment period which they desired; that West was authorized in its discretion to quote any one of four interest rates; that the Blons did not act under any disability; and that they were not constrained to seek financing from Bank One, or were otherwise foreclosed from credit shopping elsewhere. Bank One had no greater duty to advise the Blons that other customers might receive a lower interest rate or that they could perhaps receive a lower rate by financing their purchase directly with Bank One than it had to advise them that another customer might have negotiated a lower price on an identical automobile or that another dealer might sell the automobile for a lower price. Reasonable minds could only conclude that the Blons' credit arrangement with Bank One through West was nothing more than an ordinary arm's-length transaction where each party sought desired advantages of the transaction.

This case is distinguishable from a line of cases cited by the Blons wherein misrepresentation of the actual cost or condition of realty or property which was the *subject* of the transaction is actionable as fraud. The allegations herein relate to the collateral matter of financing, not to the subject of the transaction. This case is also distinguishable from *Stone* v. *Davis, supra,* wherein a lending institution, in the discharge of its truth-in-lending duties, broached the subject of mortgage insurance to a loan customer and was held to a fiduciary duty to fairly disclose to the customer how such insurance might be procured. The court in *Stone* expressly distinguished the area of *loan processing,* in which the fiduciary duty was held to arise, from the negotiation of the terms and conditions of a mortgage loan in which the bank and its customer engaged in an arm's-length transaction. *Stone* v. *Davis, supra,* at 78-79, 20 O.O. 3d at 67, 419 N.E. 2d at 1098.

Thus, we hold that a creditor and consumer stand at arm's-length in negotiating the terms and conditions of a consumer loan and, absent an understanding by both parties that a special trust and confidence has been reposed in the creditor, the creditor has no duty to disclose to the consumer the existence and details of a finder's fee or similar arrangement with a credit arranger. Accordingly, we reinstate the judgment of the trial court in favor of Bank One on the Blons' claim of fraud for failure to fulfill a common-law duty to disclose.

Finally, we consider whether the bank was entitled to summary judgment on the Blons' claim that the bank's application of the refund proceeds arising from cancellation of the American Warranty vehicle service contract constituted conversion, fraud, or breach of the loan agreement.

Under the terms of the service contract, upon notice of cancellation as given by the Blons, a full refund was to be issued by American Warranty to the bank and Geraldine Blon as joint payees. The purchase and security agreement, which is otherwise silent regarding the policy refunds, further identifies Bank One's interest in the refund as a security interest. At best it may be said that the Blons had sole equitable interest in the funds and that

the Blons and Bank One held a joint legal interest in the funds.[4]

We first note that there is no showing that Bank One converted the refund check through improper negotiation. Although the refund should have been issued by American Warranty to Bank One and Geraldine Blon as joint payees, the refund check was, in fact, issued by West. Moreover, neither the evidence of record nor the pleadings establish either in whose name(s) the check was made payable or the manner of negotiation, so that even upon a favorable construction of the evidence, conversion of an instrument under R.C. 1303.55 (UCC 3-419) is not shown.

The Blons assert, and Bank One admits, that the $500 refund was applied towards paying the principal on the loan. The Blons contend this was an act of common-law conversion, a wrongful exercise of dominion over their property in exclusion of their rights, or a withholding from their possession under a claim inconsistent with their rights. *Railroad Co.* v. *O'Donnell* (1892), 49 Ohio St. 489, 497, 32 N.E. 476, 478-479. Clearly, however, Bank One applied the refund for the benefit of the Blons, consistent with both parties' legal and equitable interests. The prepayment of the loan principal reduced the number of total loan payments due on the note. We perceive no prejudice to the Blons' rights of ownership to the funds, and therefore cannot conclude that a material issue of fact exists as to whether the receipt, negotiation, or application of the refund constituted conversion under R.C. 1303.55 or the principles of common law.

We also reject the Blons' contention that the payment of the refund towards principal was fraudulent because it was not accompanied by a new truth-in-lending statement or recomputation of the finance charge imposed on the loan. Application of the refund affected the loan balance and term in a manner called for under the purchase and security agreement.[5] An issue as to whether a fraudulent misrepresentation occurred does not appear even on a favorable construction of the facts, and we find that summary judgment was properly rendered on the claim of fraud.

Finding neither conversion nor fraud, we further conclude that application of the refund proceeds to reduce the Blons' loan principal did not constitute a breach of the purchase and security agreement. We hold that a creditor which holds a security interest in the proceeds of a refund from cancellation of an automobile service contract financed contemporaneously with an automobile does not commit conversion, fraud, or breach of contract when it applies the refund proceeds to reduce the principal amount due on the loan. Therefore, summary judgment was properly rendered for the defendant bank on the Blons' breach of contract claim.

---

[4] See, generally, 4 Hawkland & Lawrence, Uniform Commercial Code Series (1984) 178, 181, Sections 3-116:01 and 3-116:04, and R.C. 1303.15 (UCC Section 3-116).

[5] Moreover, in response to the Blons' concerns, by letter of April 14, 1983, Bank One offered, and the Blons rejected, refinancing of the pay-off balance as reduced by the refund at a lower interest rate (14.9 percent). Acceptance of the offer would have both preserved an extended loan period (in effect, forty-four months) and reduced the overall finance charges to the Blons.

Accordingly, we reverse the judgment of the court of appeals insofar as it overturned the judgment of the trial court and reinstate the grant of summary judgment to Bank One.

*Judgment reversed.*

LOCHER, HOLMES, DOUGLAS, WRIGHT and KOEHLER, JJ., concur.

SWEENEY, J., concurs in part and dissents in part.

KOEHLER, J., of the Twelfth Appellate District, sitting for H. BROWN, J.

SWEENEY, J., concurring in part and dissenting in part. While I concur in the judgment encompassing the first two syllabus paragraphs herein, I must respectfully dissent from the disposition rendered in the third syllabus paragraph. In my view, a legitimate jury question has been raised as to whether the bank's actions with respect to the vehicle service contract refund check constitute a conversion of that instrument.

In the cause *sub judice,* all parties seem to agree that under the terms of the vehicle service contract, if the Blons would ever cancel the contract, a refund check would be issued to Bank One and the Blons as joint payees. The record indicates that Bank One had a security interest in the refund check; however, none of the relevant documents to the transactions indicates who is entitled to retain exclusive possession and use of the refund proceeds. Since the contract is ambiguous on these points, it is clear that summary judgment was improperly granted by the trial court. See *Inland*

*Refuse Transfer Co.* v. *Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321, 15 OBR 448, 474 N.E. 2d 271.

In my opinion, the majority's analysis on this issue is both cursory and incorrect. The majority rationalizes Bank One's retention of the refund check without the Blons' endorsement or acquiescence by raising a somewhat condescending *noblesse oblige* justification that the bank was only acting in the best interests of the Blons. I find such a justification to be wholly unacceptable. There is no indication in the record that the Blons were in arrears on their loan or that they were about to breach their contract with the bank anticipatorily. Hence, there was no compelling reason for the bank to apply the refund check to the balance due on the note other than to reduce its own risk on this indebtedness which it naturally undertook by loaning out the money in the first instance.

Since it appears that the bank was not entitled to exclusive dominion and control over the refund check, its actions in applying the proceeds of the check to the Blons' note may have amounted to a common-law conversion or a conversion of an instrument pursuant to R.C. 1303.55.

In any event, reasonable minds could come to more than one conclusion under the evidence proffered in this cause. Therefore, I believe that summary judgment was improperly granted on the issue of whether Bank One's retention of the vehicle service contract refund check constituted a conversion of that instrument. Accordingly, I would affirm the court of appeals' opinion that such presented a proper question for a jury to resolve.