OPINION
The plaintiffs/appellants, Paul and Velma Billerman ("the appellants"), appeal the judgment of the Mercer County Court of Common Pleas, granting summary judgment in favor of the defendant/appellee, Robert E. Moorman ("the appellee"). Based on the following, we affirm in part and reverse in part the judgment of the trial court.
Appellant Mr. Billerman was an employee of and a stockholder in James W. Simons, Inc., dba Mersman Furniture Company ("the company" or "Mersman"). He began working for Mersman in 1953. After the company went bankrupt in 1988, Mr. Billerman acquired a total of ninety shares in the company in 1991, when he and a group of other investors purchased its assets from the bankruptcy trustee in order to reopen the business. Mr. Billerman's shares were later reissued in both his and his wife's names. After it reopened, the company continued to have financial difficulties. In 1992, the appellee and a group of investors contributed one million dollars in capital in exchange for corporate stock in hopes of stimulating a corporate turnaround. Through this contribution, the appellee became the company's primary stockholder, as well as its president and a member of the board of directors. For his part, Mr. Billerman became the only original shareholder, refusing to sell his shares.
Subsequent to the appellee becoming involved in Mersman, the appellants entered into two agreements with the company. The first arrangement was a stock option agreement ("the agreement"), which outlined the circumstances under which the appellants could sell their shares in the company. The second agreement was a promissory note ("the note"), which the appellants received in exchange for $17,000 which they loaned to the company. This money, along with the contributions of other investors, was purportedly used to secure a bank loan. These two transactions comprise a large part of the instant dispute.
After continuous financial trouble, the company ultimately ceased operations in April 1995 and its assets were sold for $850,000. The appellants filed suit against the appellee when they failed to recoup, under the agreement or the note, any of the money which they contributed to the company. The appellants brought a complaint against the appellee for fraud and breach of fiduciary duty, among other claims. They alleged that the appellee's misrepresentations about the company's financial state caused them to enter into the agreement and to forgo exercising their options under it. The appellants also claimed that the appellee fraudulently induced them to make the $17,000 loan to the company. Also, the appellants claimed that they were damaged by certain alleged behavior in which the appellee engaged, including (1) wrongful conversion of and failure to properly account for and dispose of certain of the company's inventory; (2) making improper loans to the company which were subsequently at least partly repaid to him by the company; and (3) causing the company's accounting firm to issue false financial reports based on information provided by him.
The appellee's initial answer to the appellant's complaint admitted much of the essential allegations therein. However, just subsequent to the parties' filing respective motions for summary judgment, the appellee requested, and was granted, leave to amend his answer to deny the allegations. Time for additional discovery and to amend summary judgment motions was provided. In a September 2001 judgment entry, the trial court ultimately granted summary judgment on behalf of the appellee and dismissed the appellants' complaint.
The appellants now appeal that judgment, asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred to the prejudice of Appellants-Plaintiffs Billerman in granting Appellee-Defendant Moorman's motion to amend his answer and denying Appellants-Plaintiffs' motion for partial summary judgment on the issue of liability.
The appellants argue that the trial court erred reversibly by granting the appellee's motion to amend his answer to the appellants' complaint. Furthermore, since the appellee's original answer admitted most of the claims against him, the appellants also argue that their motion for partial summary judgment should have been granted. We disagree with the appellants' assertions.
Civ.R. 15(A) governs the procedure for amending pleadings. It states, in relevant part:
 A party may amend his pleading once as a matter of course at any time before a responsive pleading is served * * *. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires.
A decision regarding whether to grant a motion for leave to amend a pleading is within the discretion of the trial court.[1] Because Civ.R. 15(A) allows for liberal amendment, the granting of such a motion should not be disturbed on appeal absent a showing of bad faith, undue delay, or undue prejudice to the party who opposed the motion.[2]
The complaint in this case was filed on February 29, 2000. The original answer was filed on March 27, 2000. The court then set a timeline for discovery as well as a deadline of October 10, 2000 for filing motions for summary judgment. Discovery was completed and both sides filed their respective motions for summary judgment on the specified date. A week later, on October 17, 2000, the appellee filed a motion to amend his answer. The appellants opposed this motion in a memorandum filed on October 30, 2000.
In granting the appellee's motion, the trial court stated that the amendment was necessary because the admissions in the original answer were "inadvertent" and amounted to "excusable neglect." The court also stated that "the proposed amendment to the defendant's answer will conform to the evidence." The trial court also specifically noted that the appellee's motion to amend was timely. The appellee's amended answer was deemed filed on November 16, 2000. The parties were granted until January 30, 2001 to conduct additional discovery and until February 13, 2001 to supplement their summary judgment motions.
Timeliness of a proposed amendment is one factor to consider in determining whether to grant a party's motion.[3] However, delay alone is not a sufficient reason to preclude an amendment; the important determination is whether the opposing party suffered actual prejudice as a result of the delay.[4]
It is true that the motion was filed over six months after the original answer and after summary judgment motions were made by both parties. The appellants claim that they were prejudiced by these facts because of the added time and expense involved in conducting additional discovery. However, the trial court alleviated these issues at least in part by granting a time extension for discovery and for supplementing the parties' summary judgment motions. Although the appellants were no doubt inconvenienced to some extent by the trial court's ruling, this fact does not rise to the level of an abuse of discretion. Because the appellants seem to concede that the trial court could only properly grant summary judgment in their favor if the appellee's motion to amend was denied, we will not address that issue.
Accordingly, the appellants' first assignment of error is not well-taken and is hereby denied.
 ASSIGNMENT OF ERROR NO. II The trial court erred to the prejudice of Appellants-Plaintiffs Billerman by improperly weighing evidence presented in this summary judgment proceeding and not recognizing the presence of a genuine issue of material fact, thereby granting appellee-defendant's motion for summary judgment.
The appellants assert that the trial court erred by granting summary judgment on behalf of the appellee because material issues of fact, including credibility of evidence, remained to be litigated.
a. Standard of Review for Summary Judgment
In considering an appeal from the granting of a summary judgment, our review is de novo, giving no deference to the trial court's determination.[5] Accordingly, we apply the same standard for summary judgment as did the lower court.[6]
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.[7] The initial burden in a summary judgment motion lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.[8] Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action.[9]
Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial.[10] The nonmoving party may not merely rely on the pleadings nor rest on allegations, but must set forth specific facts that indicate the existence of a triable issue.[11]
 b. The Stock Option Agreement
The appellants allege that the appellee's practice of personally loaning the company money, then writing checks from the company's account to repay himself constituted fraud and breach of fiduciary duty. Furthermore, they contend that, had they known of the appellee's activities, they would not have entered into the agreement and forgone their right to exercise their options under it.
To prove a claim fraud, the plaintiff must show (a) that the defendant made a representation or, where there was a duty to disclose, concealment of a fact, (b) which was material to the transaction at hand, (c) that was made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that knowledge may be inferred, (d) and with the intent of misleading another into relying upon it, (e) that the plaintiff justifiably relied upon the representation or concealment, and (f) and that the plaintiff suffered an injury proximately caused by the reliance.[12] Put another way, to fasten personal liability upon a corporate officer for fraud, it must be shown that he knew that he was making false statements or representations, that he intended these falsehoods to be acted upon by the parties seeking redress, and that they were acted upon to the injury of the party.[13]
The appellee admitted in his deposition that he did not disclose his cash infusions to the company or his reimbursement for part of that money with any of the stockholders or with the board of directors until the practice was finally questioned.[14] He also admitted that the transactions were not properly accounted for in corporate financial statements. Thus, it is beyond question that the appellant knowingly failed to disclose his activities and that he misrepresented the company's finances. According to the appellants, this information was material because the cash infusions artificially supported the company, enabling it to pay its monthly bills when it would not otherwise have been able to do so. For his part, the appellee contends that his convoluted business practices were not significant because (1) they allowed the company to meet its financial obligations and therefore to remain in operation, which benefited the appellants as stockholders and Mr. Billerman as a company employee, and (2) they had no effect on the financial statements' representation of the company's "bottom line" because each of the loans appeared as a negative cash balance.
We begin by noting that the appellants brought this case to recover damages they suffered as investors; therefore, any benefit that Mr. Billerman may have received based on his continuing employment with the company is irrelevant to our analysis. Likewise, we decline to place weight on the appellee's claims that the large personal losses he suffered as a result of his investment in Mersman preclude a claim of fraud. We will not indulge in speculation regarding the motives behind appellee's personal investments — the issue is a question reserved for the trier of fact. That said, we agree with the appellee that reasonable minds could only conclude that his actions did not induce the appellants to enter into the agreement. The agreement was executed in November of 1992 and, by the appellants' own accounts, the appellee did not make his first "loan" to the company until December of that year.
We turn to the issue of whether the appellants were fraudulently induced into not exercising their options. The trial court granted summary judgment in favor of the appellee on this issue because it found that on the dates when the appellants could have exercised their options, the value of the stock was zero. Therefore, by the trial court's reasoning, the appellants could not show that they were damaged as a result of the appellee's misrepresentations. The appellants maintained that the terms of the agreement allowed them to exercise any of their options at any time.
Under the section of the agreement entitled "Options," eight option dates are set forth, along with a corresponding number of shares for each date. It next states the following:
 Billerman may exercise any one or more of these options at any time and from time to time by Billerman delivering to the corporation written notice of the exercise of the Option on or before the "Option Date" set forth above. The exercise of the option shall be effective with respect to the number of shares set opposite the applicable Option Date. Billerman may exercise any option regardless of whether he exercises any other option.
The appellants contend that this clause authorized them to exercise any one or all of their options at any time and likewise to receive payment for these options. We disagree. Although the agreement states that the appellants may exercise one or more of these options "at any time and from time to time," it also states that such an exercise shall apply only to the number of shares listed beside the applicable "option date." We also note that this section applies only to the time at which the appellants may exercise their options. Section 2 of the agreement, which is entitled "Purchase Price and Payment" states in relevant part:
 The purchase price for shares with respect to the exercise of any option shall be paid at the Closing which that date selected by the corporation on or before June 15 immediately following the Option Date.
This section makes it clear that the appellants could not have received payments for any of their options prior to the first "Option Date," April 15, 1994. The appellee testified both in his affidavit and in his deposition that, as of June 15, 1994, the company's debts far outweighed its assets. The appellants presented no evidence to controvert this testimony. Also, in a previous action to assert their rights as dissenting shareholders, a court-appointed appraiser determined that the fair cash value of the appellants' stock was zero as of July 18, 1995. Based on this, the trial court found that the reasonable minds could only conclude that the appellants suffered no damage as a result of the non-exercise of the eight options created by the agreement. Although we agree with the trial court's analysis of this point, we do not find it to be dispositive evidence that the appellants can show no damage as a result of the appellee's actions.
The appellants have also alleged that the appellee's actions constituted a breach of fiduciary duty. It is well-settled that corporations and their officers and directors occupy a fiduciary relationship with corporate shareholders.[15] The Ohio Supreme Court described this duty as follows:
 * * * [D]irectors must manage the corporate business with a view solely to the common interest, and cannot directly or indirectly derive personal profit or advantage from their position which is not shared by all the stockholders. The maxim * * * of the civil law applies without limitation or restriction to their relation to the corporate property and business. [Corporate directors] occupy a strictly fiduciary relation to the stockholders and are accountable to them on principles governing that relationship.[16]
Also, "[a] party in a business transaction with another with whom he is in a fiduciary relationship must fully disclose material facts known to him but not to the other."[17]
As we stated previously, the appellee has admitted that he wrote checks to himself out of the Mersman account, purportedly for the purpose of reimbursing himself for loans that he previously made to the company. No matter how plausible this explanation may be, when deciding a motion for summary judgment, a court is not permitted to weigh the proof or choose among reasonable inferences.[18] "In ruling on such a motion, the court is limited to examining the evidence taking all permissible inferences and resolving questions of credibility in plaintiff's favor."[19] It is the providence of the fact finder to weigh the believability of the appellee's explanation against the appellants' assertion that the appellee acted fraudulently and in breach of his fiduciary duty, thereby benefiting himself and lowering the value of the appellants' stock. Therefore, construing the evidence in the light most favorable to the appellants, we find that reasonable minds could differ regarding whether the appellee's failure to disclose amounted to fraud and breach of fiduciary duty.
c. The Loan and Promissory Note
The appellants also contend that the appellee's concealments induced them to loan the corporation $17,000, in that they relied on the financial statements that were controlled by the appellee when deciding to make the loan. The $17,000 was ostensibly to secure inventory for a contract with Sears. The trial court granted summary judgment for the appellee on this issue because the appellants failed to present any evidence that they relied on the financial statements. In fact, Mr. Billerman admitted in his deposition that he knew the company was having financial difficulties at times relevant to this issue.
Of course, if Mr. Billerman had reviewed the company records prior to making his loan, they arguably would have revealed nothing surprising. This is because, as discussed above, the records did not accurately reflect how the appellee was treating the company's finances. We note again that one who occupies the role of fiduciary in relation to another must fully disclose material facts known only to him when entering a business transaction with the other.[20] The duty to disclose is limited where the party complaining knew, or should have made reasonable attempts to discover the information.[21] Thus, in Isroff v. WesthallCo., the court held that there was no affirmative duty to disclose where shareholder had ready access to all relevant information.[22] Such was not the case here, because the appellee's failure to account for his cash advances and subsequent withdrawals meant that the appellants could not have discovered that information unless it was disclosed by the appellee. Thus, construing the evidence in the light most favorable to the appellants, reasonable minds could conclude that the appellee acted fraudulently and breached his fiduciary duty to the appellants by failing to disclose his activities to them, thereby inducing them to make the loan.
The appellants also point out that the appellee admitted that the money from the stockholders' loans never actually resulted in a contract with Sears. Also, according to the appellants, the appellee made at least one large cash withdrawal from the company's account just after the loans were made. The appellee has not disputed that he made such withdraws on the dates proposed by the appellants. Based on this, reasonable minds could differ as to whether the appellee intended to defraud the appellants when he requested that they enter into the note.
d. The Disposition of Certain Company Assets
The appellants argue that a question of fact exists regarding the disposition of certain company assets value at $194,000. The parties agree that these assets were excluded from the Purchase Agreement when the company's assets were sold. The appellee stated in his deposition that the company's Board of Directors authorized him and another individual to dispose of the assets in exchange for forgiveness on a company debt that was personally secured by them. The appellee claims that he ultimately abandoned the property and wrote it off when he became aware that he could not sell it for its supposed value. He claims that even if he had sold it, the proceeds would have gone directly to the bank which held a security interest in the property, thereby reducing his and his follow director's personal liability on the loan. The appellants have presented no evidence to dispute this deposition testimony. Accordingly, we agree with the trial court that reasonable minds could only find for the appellee regarding this issue.
We find that there that there are issues of material fact regarding the appellants' claims in relation to the Stock Option Agreement and the Promissory Note. Accordingly, the appellants' second assignment of error is well-taken and is hereby granted.
Having found error to the appellants herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
WALTERS and BRYANT, JJ., concur.
[1] Turner v. Central Local School Dist. (1998), 85 Ohio St.3d 95,99.
[2] Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 6.
[3] Mortimore v. Mayfield (1989), 65 Ohio App.3d 450, 455 (citations omitted).
[4] Frayer Seed, Inc. v. Century 21 Fertilizer and Farm Chemicals,Inc. (1988), 51 Ohio App.3d 158, 165; Scweizer v. Riverside MethodistHospitals (1996), 108 Ohio App.3d 539, 546.
[5] Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
[6] Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8.
[7] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-87.
[8] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[9] Civ.R. 56(C).
[10] Dresher v. Burt, 75 Ohio St.3d at 293.
[11] Shaw v. J. Pollock Co. (1992), 82 Ohio App.3d 656, 659.
[12] Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54,55.
[13] Heritage Funding Leasing Co. v. Phee (1997), 120 Ohio App.3d 422,430-431.
[14] According to the appellee's deposition, no one asked him about this practice until eight months after the final cash advance.
[15] Thompson v. Central Ohio Cellular, Inc. (1994), 93 Ohio App.3d 530,540, citing Crosby v. Beam (1989), 47 Ohio St.3d 105, and Gries SportsEnterprises, Inc. v. Cleveland Browns Football Co. (1986),26 Ohio St.3d 15.
[16] Thomas v. Matthews (1916), 94 Ohio St. 32, 43.
[17] Blon v. Bank One, Akron, N.A. (1988), 35 Ohio St.3d 98, 101.
[18] Dupler v. Mansfied Journal Co. (1980), 64 Ohio St.2d 116,121.
[19] Id.
[20] Blon, supra.
[21] Isroff v. Westhall Co. (Feb. 21, 1990), Summit App. No. 14184, unreported.
[22] Id.