[Cite as *BAS Broadcasting, Inc. v. Fifth Third Bank*, 2018-Ohio-1324.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

BAS Broadcasting, Inc.                     Court of Appeals No. L-17-1146

    Appellant                              Trial Court No. CI0201503433

v.

Fifth Third Bank                           **DECISION AND JUDGMENT**

    Appellee                               Decided: April 6, 2018

* * * * *

Richard M. Kerger and Kimberly A. Conklin, for appellant.

Brett A. Wall and Patrick T. Lewis, for appellee.

* * * * *

**JENSEN, J.**

{¶ 1} Plaintiff-appellant, BAS Broadcasting, Inc. ("BAS"), appeals from the judgment of the Lucas County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Fifth Third Bank ("Fifth Third"). For the reasons that follow, we affirm the decision of the trial court.

**{¶ 2}** BAS owns and operates several radio stations throughout northern and central Ohio. Thomas Klein is 60 percent owner, president, and chief executive officer of BAS.

**{¶ 3}** In 2012, BAS commenced efforts to refinance its then-existing $7.4 million debt with Gladstone Capital Corporation ("Gladstone"). According to Klein, "traditional bank financing in the post 2008/recession climate was proving to be difficult." Klein learned that "the U.S. Small Business Administration ("SBA") would likely be the only avenue available for BAS to refinance the Gladstone debt." So, Klein met with a SBA representative in Cleveland who explained that in order for BAS to get a SBA loan, BAS would have to "partner with a bank." As Klein understood it, "the bank would lend the money and the SBA would guarantee it."

**{¶ 4}** On October 9, 2013, BAS received a commitment letter from Huntington Bank ("Huntington") for $5 million in loans ($4.806 million of which were to be guaranteed by the SBA). This was not enough to pay off the Gladstone debt. In the months that followed, BAS's attorney successfully negotiated an agreement with Gladstone to give BAS time to obtain financing and to "accept a short payoff, or principal reduction of their note."

**{¶ 5}** As BAS was awaiting formal approval on the Huntington loans, BAS reached out to Fifth Third to see if it could offer a loan with more favorable terms. According to Klein, Fifth Third Senior Vice President Dirk VanHeyst informed him, by phone, that Fifth Third could offer a SBA loan with better terms than Huntington.

2.

**{¶ 6}** On December 5, 2013, VanHeyst sent Klein an email containing a three page approval letter for a $5 million term loan. The letter indicates "[t]he approval is subject to certain conditions and the formal approval by the [SBA]." In his cover letter email, VanHeyst explains: "My apologies in the delay in sending this to you. Unfortunately it contains the condition of the approval of the SBA without using [Fifth Third]'s preferred lender status which will delay final approval and may not meet your needs."

**{¶ 7}** By the time BAS received the written offer from Fifth Third, it had received notice from Huntington that its loan had been approved by the SBA and that it would be able to close by December 30, 2013. BAS had a decision to make: it could move forward with the Huntington deal or it could continue pursuing the Fifth Third offer, the latter more appealing deal than the former. Klein knew that Fifth Third would not be able to close until January 2014. Mike Herbert (Klein's business partner and part-owner of BAS) and the attorney for BAS requested a face-to-face meeting with representatives from Fifth Third.

**{¶ 8}** Shortly thereafter, Klein, Herbert, Anthony Paradiso (the third and final part-owner of BAS), and their attorney sat down with Fifth Third's VanHeyst, Glenn, and Alex Gerken. After being informed that BAS had received SBA approval on the Huntington deal, Gerken appeared confident that Fifth Third could get the deal done. He went so far to inform the BAS partners and their counsel that he had "never had a SBA loan not go through." Klein averred: "Gerken said that once they decide to submit a

3.

loan, it gets approved. To prove the point, Micah Glenn took a Huntington pen from the table and snapped it in half stating we would not need it anymore."

{¶ 9} The BAS partners made their decision. They informed Huntington that they decided to go with Fifth Third because it was "offering better terms." Huntington made a counteroffer reducing the SBA loan fee and interest rate. However, the Fifth Third terms were still more favorable than Huntington's offer. The BAS partners elected to proceed with Fifth Third.

{¶ 10} Because the BAS partners had already obtained SBA approval for the Huntington loan, "the idea that the SBA would deny an application through the Fifth Third loan never occurred to [them.]" Unfortunately for the BAS partners, however, on March 4, 2014, the SBA notified Fifth Third that it was unable to approve its loan guarantee request for the following reasons: (1) "[d]isproportion of debt to tangible net worth after the loan," and (2) "Refinancing criteria not met – shift of risk to SBA." The next day, Fifth Third forwarded the SBA notice to the BAS partners.

{¶ 11} "Blindsided" by Fifth Third's notice, the BAS partners went back to Huntington. BAS closed on the Huntington loan on March 21, 2014.

{¶ 12} On July 22, 2015, BAS filed a two-count complaint against Fifth Third alleging breach of contract and fraud in the inducement. On September 23, 2016, Fifth Third moved for summary judgment on both counts. On October 19, 2016, BAS, with leave of court, amended its complaint to allege only fraud in the inducement. On

4.

October 21, 2016, BAS filed a memorandum in opposition to Fifth Third's motion for summary judgment. Fifth Third filed a reply.

{¶ 13} On June 1, 2017, the trial court issued a judgment entry granting Fifth Third's motion for summary judgment and dismissing BAS's amended complaint. This appeal followed. In its sole assignment of error, BAS asserts,

> The trial court erred when it granted summary judgment in favor of appellee Fifth Third Bank because there were genuine issues of fact for a jury to decide.

{¶ 14} Our standard of review for summary judgment is the same as that of the trial court. We review cases "de novo, governed by the standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 186, 2005-Ohio-4559, 833 N.E.2d 712.

{¶ 15} Applying Civ.R. 56(C), summary judgment is appropriate where: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Bostic v. Connor*, 37 Ohio St.3d 144, 146 524 N.E.2d 881 (1988).

{¶ 16} Recently, the Supreme Court of Ohio explained that a successful fraudulent inducement claim requires clear and convincing proof of each of the following elements:

> '(1) A representation (or concealment of a fact when there is a duty to disclose), (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness

as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance.' *Bender v. Logan*, 76 N.E.3d 336, 2016-Ohio-5317, ¶ 52 (4th Dist.), quoting *Volbers-Klarich v. Middletown Mgt., Inc*., 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27.

{¶ 17} BAS's fraudulent inducement claim is premised on its belief that Fifth Third concealed a fact that it had a duty to disclose. Specifically, BAS alleges that Fifth Third failed to inform its owners that Fifth Third's submission of the loan to the SBA "without using preferred lender status meant greater scrutiny and involved more risk that that loan would not be approved." Thus, the first question presented by this appeal is whether, as a matter of law, Fifth Third had a duty to disclose the details associated with its decision not to utilize its preferred lender status when it submitted the loan to the SBA.

{¶ 18} "[T]he duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or another similar relation of trust and confidence between them." *Strategy Group for Media v. Lowden*, 5th Dist. Delaware No. 12CAE 03 0016, 2013-Ohio-1330, ¶ 28. Under Ohio law, "a debtor-and-creditor relationship does not generally create a fiduciary relationship." *Groob v. KeyBank*, 108 Ohio St.3d 348, 351, 2006-Ohio-1189, 843 N.E.2d 1170. Absent "special circumstances," Ohio law does not recognize a fiduciary duty between a bank and its

6.

customer. *Id.* at 353. "A fiduciary relationship may be created out of an informal relationship, but this is done only when both parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320 (1979), paragraph one of the syllabus.

{¶ 19} On appeal, BAS maintains that a fiduciary relationship was created because Fifth Third knew that the Huntington loan had been submitted and approved using that bank's preferred lending status. We disagree. We have found no authority in support of BAS's argument and we are compelled to transform this ordinary business banking relationship into one of a fiduciary nature.

{¶ 20} "[I]n business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other." (Citations omitted.) *Blon v. Bank One*, 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988).

{¶ 21} Here, Fifth Third's VanHeyst specifically informed BAS that it was not proceeding under the preferred lender status and that the decision would "delay final approval and may not meet your needs." There are no facts in dispute. As a matter of law, BAS had the opportunity to ascertain facts relevant to SBA's approval process for a loan not submitted under the preferred lender program.

{¶ 22} Construing the evidence in favor of BAS, we find that reasonable minds could only conclude that Fifth Third had no special relationship of trust and confidence.

7.

Because this was an ordinary business banking relationship, Fifth Third had no duty to disclose to BAS the differences between the SBA's preferred lender and certified lender programs.

{¶ 23} Alternatively, BAS argues that the trial court erred in granting summary judgment because sufficient evidence was presented that Fifth Third was untruthful when it described the consequences of the bank's decision not to proceed under the preferred lender program. BAS argues that VanHeyst's December 5, 2013 cover letter email evidences Fifth Third's "intentional deception." In that email, VanHeyst indicates that Fifth Third's submission to the SBA "without using the Bank's preferred lender status * * * will delay final approval and may not meet your needs."

{¶ 24} In response, Fifth Third denies VanHeyst's statement was "intentionally deceptive." Rather, it asserts that "as a bank in the business of making loans, Fifth Third had no incentive to invest the considerable time and resources necessary to pursue a loan it did not believe the SBA would likely approve." In hindsight, it appears that VanHeyst was mistaken in his opinion about the effect of Fifth Third's submission of a loan guarantee request to the SBA under the certified lender program. The undisputed evidence support's Fifth Third's opinion that it worked hard to finalize this loan. BAS has submitted no evidence that Fifth Third or its employees had any reason to believe the loan would not be approved. In fact, there is no evidence that Fifth Third had ever been turned down by the SBA.

8.

**{¶ 25}** A claim of fraud cannot be predicated upon representations relating to a third-party's future actions unless at the time the representation is made, the person making the representation had a reason to believe his representations were erroneous. Construing the evidence in favor of BAS, we find no justifiable inference that at the time he voiced his opinion, VanHeyst had any reason to believe Fifth Third's loan guarantee request would not be approved by the SBA.

**{¶ 26}** For the reasons set forth above, we find BAS's sole assignment of error not well-taken. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Thomas J. Osowik, J. _____

James D. Jensen, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.