[Cite as *Scott v. Ford*, 2021-Ohio-208.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOHN J. SCOTT,                             :

    Plaintiff-Appellant,          :          No. 109414

    v.                                        :

SARCHIONE FORD,                       :

    Defendant-Appellee.          :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 28, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-909439

***Appearances:***

James S. Wertheim L.L.C., and James S. Wertheim, *for appellant.*

Gallagher Sharp L.L.P., Richard C. O. Rezie, and Rema A. Ina, *for appellee.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant John J. Scott ("Scott") appeals from the decision of the trial court that granted the motion for summary judgment of defendant-

appellee Sarchione Ford ("Sarchione"). Upon review, we affirm the decision of the trial court.

**Background**

{¶ 2} In October 2018, Scott purchased a pre-owned 2014 Volvo S80 with over 70,000 miles from Sarchione. Scott contacted Sarchione through Autotrader and corresponded with Sarchione's salesman, Royce Yoder. The parties agreed to a purchase price of $16,500 plus taxes and fees.

{¶ 3} Scott is an African-American male with an excellent credit score. Scott made a down payment of $2,000 and needed to finance the remaining amount. He met with Sarchione's finance manager, David Liebro. Scott claims that Liebro told him that he would help him get financing "at the best and lowest rate available."

{¶ 4} Liebro submitted Scott's loan application to five potential lenders that have financing agreements with Sarchione. Each of these lenders provided Sarchione with a buy rate, which is the rate the bank provides to the dealership. Each lender also provides a range for a customer rate, which is an additional percentage each lender allows on top of the buy rate, and the reserve contributes to Sarchione's profit. Sarchione's policy is to be consistent and to always add the maximum customer rate each lender allows, subject to certain specific exceptions, to ensure everyone is treated alike.

{¶ 5} Of the five potential lenders, Citizens Bank offered the lowest interest rate, consisting of a buy rate of 4.13 percent plus a customer rate of 1.75 percent, for

the offered interest rate of 5.88 percent. Scott thought the rate seemed high for his credit score, but he accepted the Citizens Bank loan he was offered. Neither the buy rate, nor the components of the interest rate were disclosed to Scott. Scott asked about additional fees, such as a $250 document fee and $195 loan origination fee, and he was told that Sarchione was permitted to add the fees. He also was informed that the annual rate was 6.3 percent, rather than the 5.88 percent quoted by Citizens Bank, because fees were included in the higher rate.

{¶ 6} Scott signed a promissory note and a security agreement, which specified the vehicle's price, monthly payments, the specific fees charged, and the annual interest rate. Included with the purchase was a 90-day or 5,000-mile limited warranty that covered only the engine and transmission. Scott declined an extended service plan, which listed the air conditioning compressor under a separate heading titled "air conditioning."

{¶ 7} After purchasing the vehicle, Scott contacted Citizens Bank to inquire about interest rates and learned the bank offered interest rates as low as 4 percent. This information was not based on financing a particular vehicle, and Scott never submitted a refinancing application. Scott inquired with Liebro, who responded that Scott was given "the lowest payment interest rate," and he provided a list of the interest rates that were offered by each of the five lenders. The list did not disclose the buy rates or the customer rates.

{¶ 8} The vehicle's battery died within ten days of purchase. Sarchione refunded the full amount for the replacement of the battery. In November 2018,

Scott contacted Sarchione about an engine noise and sent a video. Once the video was received, Scott was told to have a mechanic check the vehicle. Scott took the vehicle to a third party, which diagnosed problems with the air conditioning compressor. Scott sent Sarchione the service charge receipt in the amount of $153.99, and the estimate for the repairs in the amount of $1,413. Sarchione offered Scott $500, but did not cover the full amount. Scott maintained that the repairs should have been covered by the limited warranty. Sarchione's position is that this repair was not covered by the limited warranty and that the $500 was a gesture of good customer service.

{¶ 9} On January 10, 2019, Scott filed the complaint in this matter raising claims for violation of the Ohio Consumer Sales Practices Act ("CSPA"), breach of warranty, misrepresentation, and discrimination. Following discovery, the parties filed cross-motions for summary judgment.

{¶ 10} On December 26, 2019, the trial court granted Sarchione's motion for summary judgment and denied Scott's cross-motion. The trial court issued a detailed opinion that set forth the underlying facts, construed the evidence in favor of Scott, reviewed each claim, and determined Sarchione was entitled to summary judgment on all the claims presented. Scott timely filed this appeal.

**Law and Analysis**

{¶ 11} Under his sole assignment of error, Scott claims the trial court erred by granting summary judgment in favor of Sarchione on all counts. Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56.

*Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12. We shall address each of the claims Scott brought against Sarchione.

## I.   Ohio Consumer Sales Practices Act

{¶ 12} "The CSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction." *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 10, citing R.C. 1345.02(A) and 1345.03(A). R.C. 1345.02(A) provides a nonexhaustive list of acts or practices of a supplier that are deceptive. R.C. 1345.03(B) sets forth circumstances to be taken into consideration in determining whether an act or practice is unconscionable. "In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating the consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24.

{¶ 13} At the core of Scott's claim for a violation of the CSPA is his assertion that Liebro told him that he would help him get financing "at the best and lowest

rate available." Sarchione never promised to provide Scott with the lowest and best possible rate that Scott could obtain on his own anywhere. Rather, the record shows that Liebro submitted the loan application on Scott's behalf to five potential lenders that had financing agreements with Sarchione. Liebro disclosed the interest rates available to Scott, informed Scott that Citizens Bank was the lowest rate, and Scott accepted that rate. Neither the representations that were made, nor the fact that Scott believes he could have obtained a lower rate had he directly applied to the lender or elsewhere, demonstrate an unfair or deceptive act under the CSPA. *See Ford Motor Credit Co. v. Majors*, Minn.App. No. A04-1468, 2005 Minn. App. LEXIS 448, at 9-21 (May 3, 2005) (finding the defendant failed to state a claim for violation of Minnesota's consumer-protection statutes where the defendant's understanding was that the dealership would attempt to obtain financing at the lowest possible interest rate for which she qualified and the dealership had no duty to disclose the buy rate and the markup on the rate offered to the defendant).

{¶ 14} The record reflects that Scott knew that the loan with Citizens Bank was 5.88 percent and that the annual rate was 6.3 percent after fees were added. He also knew the monthly payment amount and the specific fees charged. To the extent Scott claims he was told all the prospective lenders were around the same rate, when the buy rates were different, the record demonstrates that the interest rates available to him were disclosed and he received the financing from the lender that offered him the lowest interest rate for his loan. Also, while R.C. 1345.03(B)(2) prohibits a

supplier from charging an excessive price in relation to "similar" consumer transactions by "like" customers, there is no evidence to demonstrate this occurred.

{¶ 15} Furthermore, Sarchione had no duty to disclose the terms of its agreement with the lender, the buy rate for the loan, or the difference between the buy rate and the rate charged to the customer. The buy rate is the rate that was offered to Sarchione by the lender. It does not represent the rate that Scott could have obtained directly from the lender. Under the financing arrangement with Sarchione, the lender sets a range for the customer rate that is added on top of the buy rate. Sarchione's practice was to charge all customers the maximum-allowed customer rate, with the exception of two scenarios that did not apply to Scott.

{¶ 16} As the Supreme Court of Ohio has recognized, generally a creditor in a consumer transaction has no duty "to separately disclose any finder's fee or similar charge which is a component of a finance charge disclosed to the consumer." *Blon v. Bank One*, 35 Ohio St.3d 98, 100, 519 N.E.2d 363 (1988). In *Blon*, the defendant contracted to purchase a used car from West Chevrolet, Inc. ("West"). *Id.* at 98. West arranged financing through Bank One, was authorized to arrange credit within a percentage range, and received a fee of 3 percent of the face amount of the loan for preparing and placing the loan with the lender. *Id.* at 98-99. The arrangement was not disclosed to the defendant. *Id.* at 99. The Supreme Court, which recognized West was arguably acting as the bank's agent, held that there was no duty to disclose the details of the financing fee arrangement. *Id.* at 101-102.

{¶ 17} Sarchione had no duty to disclose anything other than the interest rate available to Scott for the loan application submitted. The evidence does not support any violation under the CSPA. There is no evidence of unfair or deceptive acts, or of unconscionable acts or practices in this matter. We find no merit to any other arguments presented regarding the CSPA claim. Although Scott also asserts breach of warranty and discrimination as violations of the CSPA, as discussed below, we find no evidence to support these claims. Upon our review, we find summary judgment was properly granted in favor of Sarchione on the CSPA claim.

## II.    Misrepresentation

{¶ 18} To establish a claim for fraudulent misrepresentation, a plaintiff must prove "a false representation, actual or implied, or a concealment of fact material to the transaction," along with other elements of the tort. *Lesco v. Toyota of Bedford, Inc.*, 8th Dist. Cuyahoga No. 86144, 2005-Ohio-6724, ¶ 13. A claim for negligent misrepresentation requires, among other things, that one supply false information for the guidance of others in their business transactions. *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989), citing 3 Restatement of the Law 2d, Torts, Section 552(1), at 126-127 (1965).

{¶ 19} That Citizens Bank provided a buy rate of 4.13 percent to Sarchione, or that it offers rates as low as 4 percent, does nothing to show that a lower rate would have been available to Scott. Moreover, there is no evidence that Scott would have received a better or lower rate had he applied directly to the lender or elsewhere. To the extent Scott relies on statements in his own affidavit that are not

corroborated by other evidence, "a self-serving affidavit standing alone, without corroborating materials contemplated by Civ.R. 56, is simply insufficient to overcome a properly supported motion for summary judgment." *FIA Card Servs., N.A. v. Pfundstein*, 8th Dist. Cuyahoga No. 101808, 2015-Ohio-2514, ¶ 12, citing *C.R. Withem Ents. v. Maley*, 5th Dist. Fairfield No. 01 CA 54, 2002-Ohio-5056 ¶ 24. Because the record does not demonstrate that Sarchione supplied Scott with any false information regarding the financing of his vehicle or concealed any fact material to the transaction, summary judgment was properly granted on the misrepresentation claim.

### III.    Breach of Warranty

{¶ 20} In order to prove his claim for breach of an express warranty, it must first be shown that a warranty existed that covered the "engine and transmission only." Scott's purchase of the pre-owned Volv0 included a 90-day or 5,000-mile limited warranty that covered only the engine and transmission. Scott claims that Sarchione breached the warranty by failing to cover the repairs for the air conditioning compressor. Sarchione claims that the air conditioning compressor is not part of the engine and is not covered under the limited warranty.

{¶ 21} The terms "engine" and "transmission" were not defined in the limited warranty. Scott maintains that the term "engine" is susceptible to more than one interpretation. In his deposition, he expressed his belief that everything under the hood is part of the engine. Yet, he acknowledged that in the buyer's guide he received, the air conditioning compressor was not on a list of some of the major

defects that may occur.  Scott also declined an extended service plan, which listed the air conditioning compressor under a separate heading titled "air conditioning," as opposed to among the parts included under "engine."

{¶ 22} The sole question here relates to the interpretation of the limited warranty.  Principles of contract interpretation apply when interpreting warranty provisions.  *Nee v. State Industries*, 2013-Ohio-4794, 3 N.E.3d 1290, ¶ 28 (8th Dist.).  When interpreting a contract, a court must give effect to the intent of the parties as reflected in the language of the contract.  *Id.* at ¶ 27, citing *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37.  "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."  *Sunoco* at ¶ 37.  "The fact that a term is not defined within the contract does not, in and of itself, make the term ambiguous."  *Nee* at ¶ 28, citing *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 2004-Ohio-7102, 820 N.E.2d 910, ¶ 23.  Undefined terms will be given their plain and ordinary meaning.  *Skerlec v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 98247, 2012-Ohio-5748, ¶ 15, citing *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 9.

{¶ 23} Merriam-Webster's online dictionary defines "engine" as "a machine for converting any of various forms of energy into mechanical force and motion."  Merriam-Webster's Online Dictionary, available at https://www.merriam-webster.com/dictionary/engine (accessed Jan. 7, 2021).  It defines "transmission" as "an assembly of parts including the speed-changing gears and the driveshaft by

which the power is transmitted from an engine to a live axle." Merriam-Webster's Online Dictionary, available at https://www.merriam-webster.com/dictionary/transmission (accessed Jan. 7, 2021). These are the ordinary and commonly understood meanings of the terms. No ambiguity exists.

{¶ 24} An air conditioning compressor neither performs nor assists the conversion of fuel into mechanical force and motion, nor does it transmit power from the engine. It is a component of the air conditioning system, which functions to control the temperature in the vehicle. Because the air conditioning compressor is not covered by the limited warranty, Sarchione is entitled to summary judgment on this claim.

## IV. Discrimination

{¶ 25} R.C. 4112.021(B)(1)(a) prohibits creditors from discriminating "against any applicant for credit in the granting, withholding, extending, or renewing of credit, or in the fixing of the rates, terms, or conditions of any form of credit, on the basis of race, color," and other grounds. A "creditor" includes any person who "regularly arranges for the extension * * * of credit[.]" R.C. 4112.021(A)(2). Chapter 4112 is to be "construed liberally for the accomplishment of its purposes * * *." R.C. 4112.08.

{¶ 26} Scott, who is African-American, claims that Sarchione unlawfully discriminated against him in violation of R.C. 4112.021(B). He claims that "[t]he dealer has the discretion to lower the customer rate all the way down to the buy rate, which is often where the discrimination occurs." He asserts that because Sarchione

does lower the rate offered to certain customers, Sarchione discriminated against him. He also argues that because Sarchione does not keep a record of when it reduces customers' rates, this allows for discriminatory conduct to occur. Further, he claims that he was a highly qualified buyer, yet he was not offered the lowest available rate, nor was he told about the buy rate. Simply because Scott assumes that discrimination occurred does not make it so.

{¶ 27} The evidence in this case shows that Sarchione's policy is to be consistent with every customer and to always add the maximum customer rate allowed, subject to certain exception. Liebro testified that Sarchione uses this policy to treat all customers alike. Exception to this policy is made only when a customer vocalizes that he or she cannot afford the payments, or when the customer shows that they can get a special interest rate through a local credit union or a local lender and Sarcione is trying to compete for the customer's business. Scott did not fall under either exception. Scott testified in his deposition that he thought the interest rate he was offered by Citizens Bank seemed high and that the monthly payment was higher than the advertised amount on Autotrader. He did not present a bona fide offer from a competing financer and tell Liebro that he would finance the car somewhere else. Rather, he accepted the loan that was offered.

{¶ 28} Scott presented no evidence of a similarly situated person being treated differently than him. Moreover, there is no evidence that Sarchione offered loans to applicants on more favorable terms on the basis of race or any other prohibited classification. Sarchione is entitled to summary judgment on this claim.

**Conclusion**

{¶ 29} Having found that summary judgment is warranted in favor of Sarchione on all claims, we overrule Scott's sole assignment of error.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
EILEEN A. GALLAGHER, J., CONCUR